The judgment of the court was pronounced by
Slidell, J.
The plaintiff is the son of the defendant and of Eliza Qradinigo, who were married in 1814 or 1815. The mother died in 1821. In the inventory made of her succession, the slaves which have given rise to this controversy were not included.
The defendant owned, before his marriage, a negro girl. She was sold during the marriage for the sum of $600, which sum the defendant some months after-wards gave to his agent, who purchased for him at Washington, in the District of Columbia, by verbal sale and delivery, the slave Rachel, and her two children Eliza and Lucy. The plaintiff now claims an interest in these slaves and their natural increase, as constituting part of the acquests and gains of the community.
The defendant owned other female .slaves previous to his marriage. Their increase born during marriage is claimed as community property.
The articles 64 and 67, p. 336, of the Code of 1808, are, with a slight change of phraseology, the same as the articles 2371 and 2374 of the Code of 1825. It may be conceded, that although the general rule established by these Codes is, that purchases made during marriage, by either of the spouses, belong to the community ; yet, that a wife may acquire separate property by the bond fide re-investment of her paraphernal funds, of which her husband had not the administration. See Broussard v. Her Husband, 11 R. R. 446. And it may also be conceded that, upon principles of equably and reciprocity, property purchased by the husband, with his separate funds, and under circumstances manifesting a distinct and clear intention to invest them for his separate account, should be considered his separate property. But if this be the proper rule, the defendant has not brought himself within it; for the intention to re-invest for his separate benefit does not appear. The defendant, however, is entitled to charge the community with the $600.
It was argued, that as the purchase was made at Washington, the rights of the defendant should be controlled by the law of that place. The slaves were personal property at the place where they were purchased; so was the money used in their purchase.' The rights of the husband and wife touching the money and the acquisition were, in our opinion, controlled by the law of Louisi *612 ana, the place of this matrimonial domicil, to which also the slaves were intended to be and were immediately brought.
With regard to the children born during the marriage from female slaves, the separate property of the defendant, we are of opinion that they did not fall into the community of acquésts and gains.
We recently had occasion to consider this question, in a case controlled by the Code of 1825. Childers v. Patten, 5th Ann. . The course of reasoning there adopted must lead to a similar result in the present case. Indeed the point is involved in less difficulty under the code of 1808 than under that of 1825, as may be seen by referring to article 62, 334. After what was said in Mrs. Patten's case, it is sufficient to refer to the articles of the Code of 1808 pertinent to the question, without citing them at length or enlarging upon them. See art. 24, p. 40; art. 4, p. 102; art. 12, p. 112; art. 50, p. 332. See also Gonor v. Her Husband, 11 R. R. 527. Frederic v. Frederic, 10 M. R. 188.
The judgment of the district court is therefore affirmed, with costs.